HOUSING AUTHORITY OF THE CITY OF MILWAUKEE,
Plaintiff,

v.

BARRIENTOS DESIGNS & CONSULTING, LLC, Calvert
Insurance Company, Gryphon Holdings, Inc. and
Associated International Insurance Company,
Defendants-Respondents,

DEHLING VOIGT, INC., Defendant-Appellant.

Court of Appeals

*No. 2005AP1394. Submitted on briefs June 6, 2006.
—Decided September 26, 2006.*

2006 WI App 203

(Also reported in 724 N.W.2d 395.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David A. Nelson* of *Doherty Law Offices, S.C.*, of West Bend.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Scott J. Thomsen* and *Wayne Siesennop of Siesennop & Sullivan*, of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J. Dehling Voigt, Inc. (Dehling) appeals the trial court's grant of summary judgment to Barrientos Designs & Consulting, LLC (Barrientos) in this litigation started by the Housing Authority of the City of Milwaukee (Housing Authority) which sought breach of contract damages from both Dehling and Barrientos for their separate breaches in the installation of several roofs on Housing Authority housing developments. Barrientos designed the roofs, while Dehling installed them. Dehling argues that the trial court erred in granting summary judgment to Barrientos after Barrientos settled with the Housing Authority because "when two co-defendants are both accused . . . of breaching separate contracts, but causing the same set of damages," a jury should determine whether one

defendant is entitled to contribution from the other. Because the trial court concluded that the damages between the two defendants could be separated and it anticipated fashioning a jury verdict form that asked the jury to individually determine the damages caused to the Housing Authority by the two defendants, resulting in Dehling's paying only for damages caused by its breach of its contract, no contribution claim would arise; thus, we affirm.

## I. BACKGROUND.

¶ 2. The Housing Authority entered into a contract with Barrientos for architectural services. Barrientos's responsibilities included providing written analyses regarding the condition of the roofs at the Housing Authority's developments, along with making recommendations and providing preliminary estimates regarding repair and/or replacements needs. Barrientos also agreed to perform additional services, including prepare drawings, specifications, and construction documents to be used for removal of some existing roof systems, and the installation of new roof systems, at a number of developments. Relying on the professional advice of Barrientos, the Housing Authority decided to bid out a contract for the reroofing work. After Dehling was the low bidder, the Housing Authority entered into a separate contract with Dehling to reroof four housing developments using Barrientos's drawings and specifications.

¶ 3. After the completion of the reroofing, many of the roofs experienced problems. The Housing Authority hired a roofing expert who, after completing an inspection, reported that both Barrientos and Dehling were at fault for the problems. Consequently, the Housing Authority had four roofs torn off and new roofs

installed by other parties. In a single action, the Housing Authority then sued both Barrientos and Dehling for breaching their respective contracts. The Housing Authority sought $1,157,760 from the two businesses and claimed that the two caused the same damages. Barrientos and Dehling cross-claimed against each other for indemnification/contribution. Barrientos then settled with the Housing Authority and filed a summary judgment motion seeking a dismissal of Dehling's cross-claim. The trial court granted its motion and this appeal follows.

## II. Analysis.

■

¶ 4.    Dehling contends that the trial court erred in granting summary judgment because the allegations raised by the Housing Authority accuse the two businesses of breaching their separate contracts, resulting in the same damages; thus, the two have common liability which gives rise to a potential contribution claim and this is a question a jury should determine. Dehling submits that it is unfair to extinguish its right to contribution from Barrientos when what is alleged is that they caused the identical damages. While we agree that it would be unfair to require Dehling to pay more than its share of the damages that flow from its alleged breach of contract, we affirm the trial court because the trial court determined that the damages could be separated out between the two companies and it expected to craft a jury verdict that asked the jury to separately assess which damages were caused by Dehling's breach of contract and which were caused by Barrientos's breach. Consequently, the alleged damages are not indistinguishable, as Dehling claims, and it will have no claim for contribution.

¶ 5.   In *Preloznik v. City of Madison*, 113 Wis. 2d 112, 334 N.W.2d 580 (Ct. App. 1983), we set out the methodology to be used in summary judgment:

> Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint . . . states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense which would defeat the claim. If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary.
>
> Summary judgment methodology prohibits the trial court from deciding an issue of fact. The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment.

*Id.* at 116 (citations omitted).

¶ 6.   Dehling argues that the trial court erred in granting summary judgment to Barrientos because: (1) an issue of fact exists as to whether the damages caused by the respective alleged breaches by Dehling and Barrientos are divisible; and (2) by granting summary judgment to Barrientos, Dehling has lost its right to seek equitable contribution from Barrientos, if indeed, the damages are not capable of being divided. Dehling relies on *Lesmeister v. Dilly*, 330 N.W.2d 95

(Minn. 1983), for its contention that Dehling and Barrientos are to be treated like joint tortfeasors and both are jointly liable for the damages caused the Housing Authority. The Minnesota case held that

> [w]here A and B owe contract duties to C under separate contracts, and each breaches independently, and it is not reasonably possible to make a division of the damages caused by the separate breaches closely related in point of time, the breaching parties, even though they acted independently, are jointly and severally liable.

*Id.* at 102 (footnote omitted). We leave for another day whether the hypothetical presented in the Minnesota case would be good law in Wisconsin, because here the division of the damages is possible.

¶ 7. The key to this appeal is the trial court's conclusion that the Housing Authority's damages by the defendants' separate breaches could be separately determined. The trial court observed:

> Seems to me that it is possible to make a division of the damages caused. . . . . That is how I'm interpreting it, that you disagree with that. But from where I sit, it does seem to me to be, at least where I sit now, what I understand the case to be about, it does seem to me to be reasonably possible to divide the damages.

As the trial court observed, each defendant had separate duties and responsibilities, and consequently, a jury could determine which part of the total damages to attribute to each party. The trial court went on to explain that by designing a jury verdict that asks the jury to separate the damages caused by each breach of contract, no right of contribution is created: "It is a jury function . . . . But if the jury function is to divide

749

the damages and whatever division they make, you are only responsible for your share, where is the right of contribution?"

■

¶ 8.   Inasmuch as the trial court enjoys great discretion in determining the form of the verdict, "the form of the verdict rests in the sound discretion of the trial court, not to be interfered with so long as the issues of fact in the case are covered by appropriate questions," *Dahl v. K-Mart*, 46 Wis. 2d 605, 609, 176 N.W.2d 342 (1970), we are satisfied that the trial court could properly divide up the damage questions between the two defendants. Moreover, the trial court advised the parties that if it later determined that it "made a wrong call here," it would bring Barrientos back into the case. Thus, we affirm the trial court's grant of summary judgment to Barrientos.

*By the Court.*—Judgment affirmed.